Here is Haas v. Haas, number 5-17-0127. Is the counsel ready? May it please the court to close the counsel. This clause was brought before the court today. Would you introduce yourself for the record? Yes, Your Honor. Attorney Philip Baldwin, representing appellate Sherry Haas. Your Honor, this clause comes before the court today on appeal from a finding of facts and conclusions of laws determined by Judge Stanley Brandmeier of the Supreme Court. The Supreme Court of Clinton County, 4th Judicial Circuit. Upon the conclusion of a hearing on October 25, 2016, in regards to the disillusion of marriage between Brett Haas and Sherry Haas. Our appeal was brought as a result of a variety of errors that we feel Judge Brandmeier's order contained, such that the entire order reflected an abuse of discretion. As the court is aware, challenging a circuit court ruling on a divorce petition is difficult. And as the court has stated on numerous times, those circuit court orders will not be challenged, shy of showing of an abuse of discretion. Dealing specifically with issues we have raised in our petition, Your Honors, we would point to a variety of mistakes. Beginning with the fact that Judge Brandmeier determined that the petitioner should receive the equity of the marital home in lieu of a technical award of maintenance. In the calculation of that technical award of maintenance, the circuit court judge applied certain numbers which we feel are erroneous. The circuit court is obviously entitled to select which index year it chooses in order to base a maintenance calculation upon. But once it selects that maintenance year, selects those earnings amounts, it should be required to calculate its math properly. In the first section of Judge Brandmeier's order, specifically paragraph 4, the judge assesses earnings in an index year for petitioner at approximately $95,000. And income for the respondent of approximately $95,000 and petitioner income at approximately $56,000. Inserting those numbers into the current formula for maintenance wouldn't yield the same result that Judge Brandmeier issued in paragraph 6 of his order. In paragraph 6, Judge Brandmeier stated that the petitioner would be entitled to a technical grant of maintenance in the amount of $47,427.50. And he assessed this technical grant of maintenance for a period of seven and a half years. There are two key problems with those calculations. The first is that inputting the index year figures that he apportioned to the parties earlier in the order, the $95,000 figure and the $56,000 figure, would yield a maintenance calculation of at most $4,400 per year. The second key problem is that Illinois statute is clear that the duration of marriage is calculated from the date of marriage until the date of the filing of separation in the circuit courts. The petitioner and respondent were married for just over 11 years. They were actually married precisely 4,239 days or 11.613 years. Applying those maintenance calculation figures towards the current maintenance schedule, their multiplier for years of marriage in a calculation of maintenance is .6. Applying the 11.613 years of marriage to the .6 multiplier yields a duration of marriage of 6.97 years, not the 7.5 years that Judge Brandmeier adopted in his ruling. I understand these are technical issues, but they are technical issues which result in large sums of money which end up being lost by our clients. Was this an issue raised in the motion to reconsider? It was, Your Honor. We raised our issues in the motion to reconsider, but arguments were not held on that motion. Subsequently, we were required to address it before this Court. Judge Brandmeier's assessment in page 6 of his order that the petitioner was entitled to a technical grant of maintenance in the sum of $42,427.50 over a period of 7.5 years is off by nearly $12,000. However, the judge's ruling was that this technical grant of maintenance didn't actually occur. He was using that figure as an offset against our client's entitlement to equity in the marital home. Brett and Sherry purchased a home early in their 11-year marriage, well, actually just before their 11-year marriage. At the time the home was purchased, the court record reflects that the sale price of the home was $138,000. At the time of the disillusion of marriage, there was less than $31,200 remaining on the mortgage balance on that home. So, as your Honors can see, there was a considerable amount of equity built up in the home. At trial, the petitioner presented evidence that the home was currently valued at $118,000. In our filings and position statements, we argued that the value of the marital home was somewhere in the vicinity of $150,000. Our request to the court was simple. Sell the house, divide the equity in the home equally between the two parties. However, Judge Vandermeer's order, although it stated that he adopted a calculation of the value of the marital home, he didn't state what he determined the value of that marital home to be. Now, we acknowledge that there's case law reflecting the fact that Judge Vandermeer is not required to assess a specific value to every asset that the parties own when dividing up marital property. However, when dealing with what is essentially the most valuable asset that the parties dealt with, we believe it would have been appropriate for him to state in his order what he determined the value of that marital property to be. What we do know is that in exchange for roughly $30,000 in maintenance, using the most generous figures that the court could have chosen to generate a maintenance calculation, our client's entire investment in the home was wiped out. This stripping of Ms. Haas of her share of equity in the home adversely affected her somewhere in the amount of $10,000 to perhaps even $20,000. The next issue that we take exception to in Justice Brandmeier's order was addressed in paragraph 7 of the judge's order which addressed the issue of dissipation. Now, during the course of the breakup of the marriage, there was a domestic dispute between petitioner and respondent, and our client was required to pay for certain fees for legal representation. Upon reflection, we would cede the issue to opposing counsel that yes, the $1,000 expenditure by our client was a dissipation of assets, a dissipation of marital assets. However, what's not addressed or what's still a problem in Judge Brandmeier's order is the fact that he awarded petitioner the entire contents of the marital home, a marital home that the petitioner and respondent had occupied together for 11 and a half years, a marital home filled with assets that an upper middle class family would accumulate over such a marriage, and awarded them to petitioner in exchange for his share of the $1,000 of assets that were dissipated by our client during her legal representation or for her legal representation. Was there any evidence presented at trial regarding the value of the contents of the marital home? There is a variety of indications within the record, Your Honor, and the issue was addressed at trial, although I don't believe a specific dollar amount was established for the contents of the marital home in question, which is another one of the issues which we take exception to. The next issue which we took exception to is we would request that the Court remand this case back to the circuit court for further ruling. Thank you, Counsel. May it please the Court? Counsel. Supreme Court Rule 323A states that the appellant, it's the appellant's responsibility to include all the evidence pertinent to the issues on appeal. Now, Justice Overstreet, you had asked, did the record contain testimony as to the value of the contents of the marital home? The problem in this case is we have no transcripts of the testimony. The appellant didn't apparently order them, provide them. It's not part of the appellate court record. There was a full day of testimony wherein 39 exhibits were testified to and introduced at trial. Now, this court has the exhibits, but we don't have the testimony. In the trial court's four-page order, Judge Brandmeier says nine times mentions testimony, nine times in his four-page order. In particular, the first paragraph of Judge Brandmeier's order states the court heard the sworn testimony. Under the finding of facts, he states parties presented documentary and testimonial evidence. Under the property distribution, Judge Brandmeier states the parties testified in great detail. Under the maintenance, the court considered the testimony of the parties. Under the marital property, the court reviewed the affidavits and has heard testimony regarding marital property, then goes on to say based on that and gives his ruling. Under the real property, Judge Brandmeier says petitioner states the property is burdened by a large water tower. The court order goes on to state that he, meaning the petitioner, states he does not believe the residence holds much attraction for others. None of this testimony is before the appellate court. How can the appellant ask this court to rule that the trial court erred when you only have a partial record of the trial proceedings? With that said, I'll address the issues. With regard to maintenance, the first issue raised was whether the petitioner is entitled to maintenance. When we look under the statutory factors, statutory factor one is the income and property of each party including marital and non-marital property. Respondent is quick to point out in his brief that the petitioner reported over $11,000 worth of non-marital property. However, they don't mention that on respondent's position statement gives an entire list of non-marital property to the respondent, including four rings I believe it was from an ex-boyfriend, her current wedding ring and other property. But she does not give one value to any of that property. So we don't know how much her non-marital property is worth. The only value that the respondent gave throughout this whole trial was she placed an arbitrary value on the marital residence. She put that in her financial affidavit. With regard to factor number two, the needs of each party, according to the financial affidavits on file, the petitioner is negative $2,232 a month after his monthly expenses and debt payments. Whereas the respondent is in the positive $494 per month. With that said, respondent states on her monthly expenses that she pays $116 a month for the real estate taxes. But Judge Brandmeier points out in his order that the petitioner was actually paying the real estate taxes on the residence. Respondent states that she spends $100 a month on laundry versus petitioner's $50. $600 on groceries versus petitioner's $300 a month on groceries. Grooming, respondent spends $150 a month versus petitioner's $50 a month. Entertainment, $200 a month versus petitioner's $25 a month. Gifts, $100 a month versus $0 for the petitioner. That's clear that the needs of the party, petitioner is in need of maintenance. Respondent is able to pay maintenance. The third factor, the realistic present and future earning capacity of the parties. The trial court states that in 2013 and 14, the respondent earned over 60% of the party's total combined income. In 2015, the petitioner earned $56,000. The respondent earned over $99,000. That's approximately 64% of the combined income. The trial court further states that the petitioner may have rights in a work comp claim for an injury that he sustained at work. However, this court does not know what the injury was, when it took place, what effect it has on the petitioner, if it diminished his future earning capacity or present earning capacities, because there are no transcripts of the testimony. And the same goes to the other statutory factors. We need the transcripts. We need the testimony at trial. The trial court specifically stated it considered the testimony of the parties in deciding maintenance, along with the statutory factors, the financial affidavits, and the arguments of counsel. With regard to the calculation of maintenance, I agree my original maintenance calculation filed in my position statement was incorrect. I believe I had, if we did the statutory formula exactly, I had that petitioner would have been entitled to $42,427. However, after the motion to reconsider, we filed a response to the respondent's motion to reconsider. I redid the calculations based on the correct length of marriage, based on the correct earnings of the parties, and that is on page two and three of my position statement, or on my motion to reconsider, response to respondent's motion to reconsider that I filed on January 9th of 2017. All the calculations are on page two and three, rather than reciting numbers and going through that. But the bottom line of that is the petitioner was actually entitled to $42,642 of maintenance if we used the statutory formula specifically, which is $215 difference in favor of petitioner. It should also be noted that the respondent failed to provide the trial court with any calculations for maintenance whatsoever prior to the trial court's opinion. The trial court found that the strict application of the guidelines in the maintenance statute would be inappropriate to the present situation. And then the trial court denied a specific award of maintenance. So I'm not so sure that those numbers are extremely relevant. With regards to the value of the marital home, again, it's appellant's responsibility to include all the evidence pertinent to the issues on appeal. No transcripts available to this court. It's clear from the trial court's order that petitioner testified as to the value of the marital home. The trial court's order states the petitioner states it is burdened by a large water tower on the land and goes on to state that the petitioner testified it doesn't hold much attraction for others. So we know there was testimony on the condition of the marital home. There was testimony on the value of the marital home. But we don't know what that testimony was because there was, there is no transcripts. And I think it would be very difficult for this court to rule that the trial court erred in the value of the marital home without knowing what the transcripts were. Now, we gave a value of $113,000 to the marital home. There was $31,000 debt. So that would be about $72,000 equity. If we divide that into, and the court divided the equity equally, petitioner would get $36,000 and respondent would get $36,000. Instead, the court gave respondent, or petitioner, the respondent's equity in lieu of maintenance, which was over $42,000. I don't know. Maybe Attorney Scroggins did not include the transcripts of the testimony for a reason. I'm not sure. With regard to the dissipation, I believe counsel stated that they are now in agreement that respondent did dissipate marital assets. But what's not agreed is the value of the contents of the marital home. Both parties were 49 years old when they married. I think common sense would dictate that they had either one or two households full of contents at the time of marriage. Therefore, we can assume that the vast majority of the contents of the marital home may have been non-marital contents. Again, we don't know because there's no transcripts. The next issue, the respondent says she should have received $500 of that $1,000 in any event. However, marital property is not divided equally. It's divided equitably. With regard to personal property and the debt of the parties, on page 3 of the trial court's order, it has the heading of non-marital property. I believe that was merely a typographical error and it should have read marital property. The reason I believe that is because the court awards the 2008 Harley, of course, that had been purchased after the marriage. And the court says respondent receives all property in her possession. She would have had to have some property acquired after the marriage. With regard to marital property, the respondent asserts that she left the home with $500 vehicle and the clothes on her back. States in their brief that that makes the court's award of all property in her possession meaningless. The trial court in its order mentions an apartment that was rented by the respondent. So we can assume that that apartment was furnished. According to the respondent's financial affidavit, she has listed over $20,000 of current debt in credit card debt. And that's only for furniture, household, clothing, and gas. Again, we don't have the testimony of what she had in that apartment or what she had as marital property. The respondent's trial gave absolutely no values to the trial court on the personal property ever. It's not in her position statement filed on October 17th of 2016. It's not in her financial affidavit filed May 19th of 2016. There is absolutely no values listed on any of the personal property. Petitioner gave values to the trial court on personal property in his financial affidavit that he filed July 29th of 2016. He also gave values of the property in his position statement filed October 25th of 2016. And it's also clear from the exhibits that he in addition gave blue book values of all the vehicles to the court. Regarding the debt, the respondent asserts that the trial court erred in the amount of the cabalot and capital one credit card debt assigned to the petitioner. The parties were divorced August 4th of 2016. Petitioner's exhibit 10 is the cabalot balance due as of July of 2016. Petitioner's exhibit 11 is the capital one balance due as of June of 16. Thank you. Thank you. Thank you. Thank you. Your Honor, as I would suggest that math is math, the court has a matter of record with the 2012, 2013, 2014, and 2015, and partial 2016 W-2s, tax returns, pay stubs of the parties. If the court plugs in the numbers that I've provided to the court, you'll see that the math comports with what I've presented to the court today. The issue has been raised several times by opposing counsel regarding the absence of a transcript in this case. And we acknowledge that that is an issue, that that's a problem, but when our office inquired as to the availability of a transcript, the preparation of a transcript, we were informed that no transcript was available. So we are left to rest upon the record of the documents which were presented and filed with the court and are part of the appellate record which has been provided to this court. The issue of the listing or assessment of the value of the marital home has been addressed in some detail, but I still want to point out that the petitioners in documents presented to the courts and submitted to this court, the petitioner's own financial affidavit submitted in 2016 listed the value of his marital home at $138,000. And yet, just a few months later, they presented evidence in court that the marital home was valued at $113,000. So over a period of a few months, in the petitioner's eyes at least, the value of the marital home dropped $30,000. Opposing counsel has argued that based upon the maintenance statute and the income disparity between the two parties, that the petitioner is entitled to maintenance. As this court is well aware, the fact that there is an income disparity between two parties doesn't automatically trigger a right of maintenance. Maintenance has been reduced to a formula in the state of Illinois at this point, and it is within the discretion of the circuit court to choose which numbers it will plug into that formula. But we're not really arguing with opposing counsel about whether or not the petitioner is entitled to maintenance. We would rather petitioner be awarded maintenance and that respondent pay the petitioner exactly what he's entitled to by formula. Well, the court had discretion. You're saying the court abuses discretion by making the award in lieu of maintenance. I understand your entire argument, but how would you summarize why that was an abuse? You said you'd rather have the payments made instead of the award of the house, but how is that an abuse of discretion? Because the court took a $140,000 home, took the roughly $110,000 worth of equity, half of which is our client's share, and wiped it away in lieu of per technical requirement of maintenance payments in the vicinity of $33,000. So in that swoop, that's just not equitable in our position, Your Honors. There was a further discussion in regards to the contents of the matter at home. Judge Brandom, I addressed in his opening reading. Thank you, Your Honor. We would ask that this be remanded back to the circuit court for re-hearing. Thank you. Thank you, counsel, for your arguments. We'll take this matter under advisement and render a decision due course. Thank you.